# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**SANDRA GOODNO** and **ANTHONY REBHOLZ**, individually and on behalf of all others similarly situated,

                Plaintiffs,

v.

**ANTERO RESOURCES CORPORATION**,

                Defendant.

**Civil Action No. 5:20-CV-100 (BAILEY)**

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND/OR STRIKE

Pending before this Court is Antero Resources Corporation's Motion to Dismiss and/or Strike Class Allegations [Doc. 15]. The Motion has been fully briefed and is ripe for decision. For the reasons stated below, the Motion will be granted in part and denied in part.

In its Motion, Antero Resources Corporation ("Antero") list the following bases for its Motion:

1. The plaintiffs waived any implied duties and warranties;

2. The *Wellman* and *Tawney* cases do not apply to the leases in this case;

3. The plaintiffs did not provide notice of the alleged breaches;

4. The declaratory judgment cause of action is duplicative; and

5. The class allegations should be stricken.

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court of the United States informed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that standard does not require "'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Merely reciting the elements of a cause of action and supporting them with conclusory statements is not enough. *Iqbal*, 556 U.S. at 677–79.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678. To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise a claim from merely possible to plausible. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

'show[n]'–'that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint must contain enough facts to "nudge [. . .] [a] claim across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

This Court is well aware that "[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id.* at 396-97.

The first ground asserted for dismissal is that the plaintiffs waived any implied duties and warranties in their leases. Each of the leases in question contains the language that "no warranties, representations, promises or inducements not herein expressed have been made or relied upon by either party." This language indicates that there are no express warranties other than those contained in the lease. There is no mention of implied warranties. This is unlike the lease language in *Kinney v. CNX Gas Company, LLC*, 2017 WL 3774376 (N.D. W.Va. August 24, 2017), which stated, in pertinent part, that "no implied covenants or conditions whatsoever shall be read into this Lease . . . including without limitation any covenants or conditions relating to the development of the premises within a certain time frame. . . ." This Court finds this langauge to be insufficient to constitute a disclaimer of implied covenants.

3

The second ground asserted by Antero is that the *Wellman* and *Tawney* cases do not apply to the leases in this case. According to Antero, these decisions are limited to "proceeds" leases.

In *Cather v. EQT Production Co.*, 2019 WL 3806629 (N.D. W.Va. August 13, 2019) (Kleeh, J.), Judge Thomas Kleeh summarized the recent law on the issue:

> Since 2001, over 18 years ago now, the Supreme Court of Appeals has clearly articulated that leases silent on the issue of "post-production" expenses do not permit — nor does the law permit — reductions of royalty payments for post-production expenses. "If an oil and gas lease provides for a royalty based on proceeds received by the lessee, **unless the lease provides otherwise**, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale." Syl. Pt. 4, *Wellman v. Energy Res., Inc.*, 210 W.Va. 200, 557 S.E.2d 254 (2001) (emphasis added).
>
> In rejecting the lessee's claim that it was entitled to deduct certain expenses before calculating the lessor's royalty, the Supreme Court of Appeals noted that the "landowner's royalty," the traditional one-eighth share of the sale price received, was "not chargeable with any of the costs of discovery and production." *Id.* at 263-64. The court further rejected the re-naming of such deductions as "post-production expenses" based on the lessee's duty to market the oil or gas produced. *Id.* at 264.

> The Supreme Court of Appeals reiterated its holdings from *Wellman* in *Estate of Tawney v. Columbia Natural Resources, L.L.C.*, 219 W.Va. 266, 633 S.E.2d 22 (2006). In fact, the court further heightened the duties on lessees if they sought to recoup post-production expenses from lessors. Any "allocation" of marketing or production costs between the lessor and lessee must be "express" in the lease and "identify with particularity" the specific deductions to be taken from the one-eighth royalty. *Id.* at Syl. Pt. 10.
>
> This Court and the Southern District of West Virginia have also had opportunity to apply the guidance of the Supreme Court of Appeals. Judge Goodwin undertook an extensive review of the history of West Virginia jurisprudence on these issues in *W.W. McDonald Land Co., et al. v. EQT Production Co.*, 983 F.Supp.2d 790 (S.D. W.Va. 2013). After synthesizing *Wellman* and *Tawney*, the Southern District concluded that "lessees have a duty to bear all costs incurred until the gas reaches market, not to a point of sale. . . . [L]essees have an implied duty to bear all post-production costs incurred until the gas reaches the market. . . ." *Id.* at 802. Judge Goodwin, in partially granting summary judgment to the lessors, found, in the absence of "lease language to the contrary, Tawney requires lessees to pay royalties free of [post-production expenses]." *Id.* at 804.

*Cather* at *3.

This Court agrees with the other courts that have addressed the issue that the holdings of *Tawney* are not limited to any specific type of royalty provision. *See Cather*,

supra at *4 ("Nor does *Tawney* limit its own application to any particular lease language."). Judge Keeley also rejected Antero's argument that the *Tawney* decision is limited to "proceeds" leases. *Corder v. Antero Resources Corporation*, 322 F. Supp. 3d 710, 719 (N.D. W.Va. 2018); *Romeo v. Antero Resources Corp.*, 2018 WL 4224452, *4 (N.D. W.Va. Sept. 5, 2018) (same).

This Court agrees with Judges Keeley and Kleeh that *Tawney* in fact does apply to the leases in question in this case.

The third ground raised by Antero is that this case should be dismissed because the plaintiffs did not provide notice of the alleged breaches as required by the leases. The plaintiffs respond that the notice provisions in their leases are virtually identical to the notice of default provision which this Court recently addressed in *Glover v. EQT Corp.*, No. 5:19-CV-223 [Doc. 40] (N.D. W.Va. June 1, 2020). In *Glover*, as in this case, the defendant gas producers moved to dismiss the royalty owners' class complaint for failure to provide pre-suit notice of default to the gas producers, under a "notice of default" provision which is essentially identical to the notice of default provision at issue here. This Court denied the gas producers' motion for several reasons, including: (1) the notice of default provision did not provide that the notice of default was a condition precedent to the filing of a lawsuit, thus making it distinguishable from the notice of default at issue in *Stricklin v. Fortuna Energy, Inc.*, 2014 WL 2619587 at *2 (N.D. W.Va. June 12, 2014); (2) the language of the notice of default provision was unclear as to what is meant to "declare in default"; (3) the *Glover* plaintiffs were "not seeking to set aside the lease–only to receive what they contend is due under the leases;" (4) any possible ambiguity in the

6

lease must be construed against the lessee; and (5) the gas producer defendants were "attempting to place form over substance."

This Court sees no reason to depart from its ruling of about 45 days ago. As in *Glover*, the applicable notice of default provision does not provide that such notice provision is a condition precedent to filing a lawsuit. Thus, the notice of default provision at issue here is factually distinguishable from the notice of default provision at issue in *Stricklin*, *supra*. In addition, the notice of default provision at issue is similarly unclear as to whether it is limited only to defaults which would justify a termination of the lease. In this case, as in *Glover*, the plaintiffs are not requesting that their leases, or those of the class members, should be terminated. Instead, like the plaintiffs in *Glover*, they seek only to receive what they contend is due under the leases. Thus, contrary to Antero's contention, the notice of default provision in the plaintiffs' leases is not distinguishable from the *Glover* notice in any material respect.

The fourth argument raised by Antero is that the declaratory judgment cause of action is duplicative of the breach of contract cause of action. This Court must agree. In *ACA Financial Guaranty Corp. v. City of Buena Vista, Virginia*, 298 F.Supp.3d 834 (W.D. Va. 2018), Judge Norman Moon held:

> The Declaratory Judgment Act, 28 U.S.C. § 2201, creates a remedy, not a substantive cause of action. Its operation "is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); see *CGM, LLC v. BellSouth Telecommunications,*

*Inc.*, 664 F.3d 46, 55 (4th Cir. 2011). Put differently, a declaratory judgment is simply the remedial procedural vehicle by which a court can declare the rights of the parties as to an underlying legal dispute over which jurisdiction is otherwise proper. *See* 10B Wright & Miller, *Fed. Prac. & Proc. Civ.* §§ 2751, 2754, 2756, 2766 (4th ed.). Its purpose is to allow "prospective defendants to sue to establish their nonliability," not create a substantive tack-on claim for an already-existing plaintiff who is adjudicating an already-live legal issue. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959); *Discover Bank v. Vaden*, 396 F.3d 366, 371 (4th Cir. 2005) (Under the Declaratory Judgment Act, "a party which traditionally would be a defendant can bring a preemptive suit in federal court, thus accelerating the claim against it.").

Thus, to the extent Plaintiffs wish to obtain a judgment establishing the validity of the contracts, they would do so by proving their substantive contract claims. One cannot, after all, succeed on a breach of contract claim without first establishing that a valid contract exists. *See Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132 (Va. 2009).

In sum, Count 1 is not a freestanding claim, and the issue it raises is already a part of what is squarely presented in this case. Accordingly, it will be dismissed.

298 F.Supp.3d at 843.

In this case, the plaintiffs have filed an action alleging that Antero breached the leases with the plaintiffs by improperly deducting "post-production" expenses from the royalties due the plaintiffs. The declaratory judgment count (Count II) seeks a declaration that Antero did exactly that with which they are charged in the breach of contract count. As noted by Judge Moon, Count II is not a freestanding claim and the issue it raises is already a part of what is squarely presented in this case. Count II will be dismissed.

Finally, Antero asserts that this Court should strike the class allegations for the following reasons:

- There are various lease terms involved;
- The Murray lease complies with Wellman and Tawney; and
- The notice and demand provision in the leases require individualized proof.

"The Court notes that motions to strike are disfavored and are infrequently granted." *Farrie v. Charles Town Races, Inc.*, 901 F.Supp. 1101, 1104 (N.D. W.Va. 1995) (Keeley, J.), citing *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D. W.Va. 1993); *First Financial Savings Bank v. Am. Bankers Ins. Co.*, 783 F.Supp. 963, 966 (E.D. N.C. 1991).

In *Lane v. Endurance Amer. Specialty Ins. Co.*, 2011 WL 1343201 (W.D. N.C. April 8, 2011), Magistrate Judge Keesler noted:

> The Fourth Circuit has noted that the law governing motions to strike brought under Fed.R.Civ.P. 12(f) is that they "are to be granted infrequently." *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 Fed.Appx. 239, 247 (4th Cir. 2007).

> This court has rarely been called upon to interpret Rule 12(f), which states, in pertinent part, that: "Upon motion made by a party ... or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because the rule is stated in the permissive, however, it has always been understood that the district court enjoys "liberal discretion" thereunder.... Despite this broad discretion however, striking a party's pleadings is an extreme measure, and, as a result, we have previously held that "[m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted."

*Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (4th Cir. 2000) (citations omitted)(emphasis added). Notably, Defendant has not argued that the text it wishes to strike is redundant, impertinent, or scandalous pursuant to Fed.R.Civ.P. 12(f).

2011 WL 1343201 at *2-3.

As noted by plaintiffs, in *Kay Company, LLC v. EQT Production Company*, 2017 WL 10436074, (N.D. W.Va. Sept. 6, 2017), this Court rejected the EQT defendants' contention that class certification was inappropriate because there were many variations in lease language. This Court emphasized that "[e]ither a lease satisfies the *Tawney*

10

standard or it does not. The issue of whether the lease satisfies *Tawney* is strictly an issue of law."

Inasmuch as the defendant has, at this juncture, raised the issue of whether the Murray lease satisfies *Tawney*, an issue of law, this Court is compelled to hold that, in fact, the Murray lease does not satisfy the requirements of *Tawney*. Under *Tawney*, a lease must expressly provide for some allocation or sharing of costs between the wellhead and point of sale. Syl. Pt. 10, **Tawney**. That express provision must identify "with particularity the specific deductions" to be withheld and the specific method of calculating the amount of post-production expenses to be deducted from the lessor's royalty. *Id.* The Murray lease does not satisfy the *Tawney* test.

Antero's final ground for striking the class allegation is that the notice provision requires individualized proof. Inasmuch as this Court has ruled that the notice provision is not applicable to this action, this is not a valid argument.

For the reasons states above, Antero Resources Corporation's Motion to Dismiss and/or Strike Class Allegations **[Doc. 15]** is **GRANTED IN PART AND DENIED IN PART**. Count II of the Complaint is **DISMISSED**. In all other respects, the Motion is **DENIED**.

It is so **ORDERED**.

**DATED**: July 21, 2020.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

11